### HUGO, SCHMELTZER & COMPANY v. FRANK PAIZ ET AL.

No 2181.  Decided December 20, 1911.

**1.—Death—Negligence—Vice-Principal.**

Any person, including a private corporation, is liable under article 3017, Revised Statutes, for the death of his employee caused by negligence of a vice principal discharging a personal duty of the employer to the deceased.  (P. 567.)

**2.—Same—Power to Employ and Discharge—Practice in Supreme Court.**

The foreman who has power to direct servants in their work is a vice-principal for whose negligent directions causing the death of an employee the master will be liable, only when he has the power to employ and discharge, as well as to direct, the injured servant.  But the evidence here considered is held sufficient to support a finding that such power of the negligent foreman to employ and discharge existed, and in such case the finding of the appellate court is conclusive on the Supreme Court.  (Pp. 567-569.)

**3.—Same—Case Stated.**

Defendants were wholesale grocers, having a freight elevator in their establishment. A foreman had charge of the shipping department and of the movement of goods in the store for that purpose, and deceased was employed under him in driving a delivery wagon and assisting in the handling of freight in the store. In moving goods on a truck in the elevator, a wheel of the truck became jammed between the floor of the building and the elevator, stopping its operation. Deceased, who was not present when the elevator was so caught, was directed by the foreman to get inside it and release the jammed truck, and on his doing so the elevator sprang up swiftly to the roof of the building, inflicting injuries causing his death. Held:

(1) The foreman, having power to direct, employ, and discharge deceased, was a vice-principal for whose negligence causing the death the employer was liable.

(2)· Defendant was presumed to know the condition and working of its machinery, and deceased was not.

(3) Deceased did not assume the risk, since it was due to defendant's negligence.

(4) The direction of the foreman to deceased to get into the elevator and release the truck was, under the evidence here considered as to the risk involved, properly held to be an act of negligence and a default in the employer's personal obligation to see that deceased had a safe place to work.

(5) Both the foreman and deceased were acting within the scope of their authority and employment in giving and obeying the order. (Pp. 565-573.)

Error to the Court of Civil Appeals, Fourth District, in an appeal from Bexar County.

Hugo, Schmeltzer & Co. obtained writ of error upon the affirmance, on their appeal, of a judgment recovered against them by Paiz and others in the District Court.

*Wm. Aubrey* and *Onion & Henry,* for plaintiffs in error.—In order to constitute a vice-principal he must have general power and control over the business and not mere authority over certain classes of work or a certain gang of men. Labatt, Master & Servant, vol. 2, p. 1437; Railway Co. v. Smith, 76 Texas, 615; Nix v. Railway Co., 82 Texas, 473.

There was no testimony showing actionable negligence on the part of defendants that would sustain a verdict and judgment against them. 4 Thompson, Neg., secs. 3769, 3993, 3999, 4001, 3748, 3749; Railway Co. v. Garven, 50 Texas Civ. App., 245; Broadway v. Gas Co., 24 Texas Civ. App., 603; Davidson v. Davidson, 48 N. W., 560; Robinson v. Wright & Co., 53 N. W., 938; Moran v. Wagon Co., 26 N. Y. Supp., 852; 10 Am. & Eng. Enc. Law, 948; Rev. Stats., art. 3017, sec. 2; Hendricks v. Walton, 69 Texas, 238; Fleming v. Loan Co., 87 Texas, 238; Lipscomb v. Railway Co., 95 Texas, 6; 1 Thomp. Neg., sec. 945; 4 Thomp. Neg., secs. 3907, 4677, 4678; Werner v. Trautwein, 25 Texas Civ. App., 608; Bonner v. Bryant, 79 Texas, 542; Mayton v. Railway Co., 63 Texas, 77; Eason v. Railway Co., 65 Texas, 577.

Where one is injured by the act or omission of a fellow servant he can not recover. Railway Co. v. Smith, 76 Texas, 612.

Where a servant is acting outside the scope of his employment and duty, and volunteers to perform the work in which he was engaged at the time he receives injuries, he can not recover. 4 Thompson,

Negligence, secs. 3748, 3749; Werner v. Trautwein, 25 Texas Civ. App., 608.

Where a servant is injured by reason of a defect in an appliance and his opportunities to know of such defects were equal or superior to those of the master he can not recover. Wood, Mas. & Serv., sec. 326; Railway Co. v. Lempe, 59 Texas, 19; Railway Co. v. Smith, 76 Texas, 612.

In this case appellant was only required to use ordinary care in the purchase of an elevator and in keeping same in repair, and the jury should have been instructed that if it did this the verdict should be in its favor. Oriental v. Barclay, 41 S. W., 117, 16 Texas Civ. App., 193; 4 Thomp. Neg., secs. 3903-3907; Sievers v. Box Co., 50 N. E., 877; Robinson v. Wright, 53 N. W., 938; Davidson v. Davidson, 48 N. W., 560.

*Anderson & Belden, J. D. Childs, Edward Haltom, A. E. Heilbron* and *James W. Brown,* for defendants in error.—Heuermann was the vice-principal of the company. Paiz was not a volunteer, in the sense that the company owed him no duty, because he was acting within the scope of his employment. 4 Thompson on Negligence, secs. 4681, 4682; Railway Co. v. Scott, 68 Texas, 694; Railway Co. v. Duncan, 10 Texas Civ. App., 479; Oriental Invt. Co. v. Sline, 17 Texas Civ. App., 692.

The Court of Civil Appeals so having found in both instances, its finding affirming the findings of the jury is a finality, and not subject to review by the Supreme Court. Constitution of Texas, art. 5, sec. 6; Rev. Stats., art. 996, sub. 3; Lee v. Railway Co., 89 Texas, 583; Bank v. Bank, 92 Texas, 436; Thomas v. Morrison, 92 Texas, 329; Loan Agency v. Fleming, 92 Texas, 458; Choate v. Railway Co., 91 Texas, 406; Newlin v. Hall, 97 Texas, 441; Meade v. Leon Blum Land Co., 85 Texas, 513.

MR. JUSTICE DIBRELL delivered the opinion of the court.

Locaria G. de Paiz, for herself as the mother of deceased, Louis Paiz, and as next friend for Frank and Otila Paiz, minor children of deceased by a first marriage, and Mollie Paiz for herself as surviving wife of deceased and as next friend of Louisa Paiz, a minor child of herself and deceased by the second marriage, brought this suit against Hugo, Schmeltzer & Co., a corporation, to recover damages for the death of said Louis Paiz, an employee of defendant.

The grounds upon which plaintiffs seem to recover damages may be stated summarily as follows: That Louis Paiz was an employee of defendant, who owned and conducted a wholesale grocery business in the city of San Antonio, and was engaged in receiving such goods into its building there situated and shipping out such goods to the various points throughout the State. That on the occasion of the injury received by said Louis Paiz, from which he died, he was engaged in the work of assisting two other employees of defendant, all of whom were working under the direction and supervision of one Charles Huermann, a vice-principal of defendant, in removing about seventy-five cases of snuff from an elevator in the building, and in

extricating the wheels of a truck from between the floor of the building and the floor or platform of the elevator. That there was in use in said building a freight elevator running from the basement to the third floor of said building, which was used for taking goods up and down from and to the different floors of the building for storage and shipment. Just prior to the accident two porters, Henry McCulloch and Bartolo Martinez, under the supervision of Charles Huermann, were engaged in removing about seventy-five cases of snuff from the first floor to the second or from the second to the third, and when they rolled the truck loaded with the snuff on to the platform of the elevator, which was on a level with the floor, the platform of the elevator began to descend and one of the porters jumped on to the elevator and by pulling one of the ropes—there being two ropes—one to lower and one to elevate, reversed the elevator, which started to ascend, when two of the wheels of the truck were caught and wedged in between the floor of the building and the platform or floor of the elevator. The wheels of the truck stopped the elevator in its ascent. About this time the deceased came from the basement and was engaged in assisting Martinez and McCulloch, the two porters, in removing from the elevator the snuff that had fallen from the truck prior to deceased's arrival. It is not alleged or shown positively by the testimony just how deceased came to assist the porters, Martinez and McCulloch, but deceased with the two porters were directed how and in what manner to remove the snuff, and after the snuff had been removed to the floor of the building, Charles Huermann, who was alleged to have been the vice-principal of defendant, directed the deceased and the two porters to remove and extricate the wheels of the truck from between the floor of the building and the platform or floor of the elevator. As soon as the wheels of the truck were extricated the elevator began to ascend with great velocity and carried deceased to the third floor or floor above, where his leg and other portions of his body were caught between the upper floor of the building and the platform of the elevator, by which injuries were inflicted from which he died.

It was alleged by plaintiff, among other grounds of negligence, that the work of removing the truck wheels from the position described above was unsafe and dangerous and that it was negligence on the part of the defendant, acting through its vice-principal, Charles Huermann, to have directed the deceased, who was "green and inexperienced" to extricate the truck wheels from the position between the elevator platform and floor of the building, without warning him of the dangerous character of the work. On this point we quote the following from plaintiff's petition:

"At the time of said occurrence defendant owed the said Louis Paiz the duty to furnish him a reasonably safe place to work, and reasonably careful, experienced and skillful servants to assist him, and an experienced and competent overseer or master to direct the work and to also to furnish him with reasonably safe machinery and appliances with which to do said work, and that notwithstanding said duties so owing by defendant to said Louis Paiz, who was then and there green and inexperienced in such work, the said defendant

then and there through its vice-principal so acting for the master, either directed and ordered said Louis Paiz, or accepted his said service, to go into, or upon the platform or floor of said elevator and engage upon a piece of work that was unsafe and dangerous and thereby cause his death as aforesaid. That is was unsafe and dangerous for defendant, through its said vice-principal, to have ordered or permitted its said servant to release the elevator, which it did, by pulling or prying the wheels of the truck loose from between the said floors, which defendant should have known, and such act was calculated to cause just such a disaster as actually occurred."

There are other grounds of negligence alleged in plaintiff's petition chargeable against defendant, which from the view we take of the case it will not be necessary to state, except as they may be applicable incidentally in framing this opinion.

The defendant answered by general and special exceptions, general denial, contributory negligence and that if the deceased was not injured and killed through his own negligence that his death was caused by the negligence of his fellow servants.

The cause in the lower court was tried with a jury, who found for plaintiff upon all the issues presented and gave damages in the sum of $3300, which was duly apportioned among the several plaintiffs. The cause having been appealed by the defendant was, on April 27, 1910, by the Court of Civil Appeals, Fourth District, affirmed. In due time a petition for writ of error was sued out in this court and on the 4th day of October, 1910, granted.

The cause of action is based on subdivision 2, of article 2899, now article 3017, of the Revised Civil Statutes, as follows: "When the death of any person is caused by the wrongful act, negligence, unskillfulness or default of another (person)."

It will not be necessary to enter into a discussion of the question of the construction to be given the foregoing subdivision, since it has been frequently construed by the courts of this State. We will pass over that question with the statement that under the application of said subdivision to injuries to persons resulting in death it is the settled law of this State that private corporations are persons within its meaning and purport. Fleming v. Texas Loan Agency, 87 Texas, 238, 26 L. R. A., 250.

The basic questions in the case are, was Charles Huermann a vice-principal of the defendant, Hugo, Schmeltzer & Company, a private corporation, and was he at the time of the injury that resulted in the death of deceased directing the deceased to do something that was required to be done by the master. If so, then his acts in the course of executing the business of the corporation were those of the master. If the evidence shows direction on the part of the vice-principal to the deceased in the performance of any work in and about the master's business and in the administration of such business, and in the due performance of such work under the direction of the vice-principal, the deceased received injuries from which death resulted, the master would be liable, provided there was negligence shown on the part of the vice-principal in directing the performance of the work—in this case, the releasing of the truck wheels from the grip of the ele-

vator so as to continue in the performance of the work previously begun and which had been suspended by the fastening of such wheels between the floors of the building and elevator so as to arrest the movement of the elevator.

As to what constitutes a servant a vice-principal, has been the subject of much legal discussion and divergent opinion in nearly every State in the Union. But whatever may be thought of the logic or wisdom of the conclusion, the rule in this State is definitely settled to be, "that mere difference in the grade of employment, or the fact that one servant is the foreman or boss of another, does not take them out of the general rule of the common law upon the subject; and that the common master is not responsible for the negligent act of the foreman or boss unless the latter has been intrusted with the power to employ and discharge." Young v. Hahn, 96 Texas, 101.

If such servant in addition to his authority to direct and supervise the work of those under him, has authority to hire and discharge such subordinate servants he becomes a vice-principal, and his "wrongful act, negligence, unskillfulness or default" is that of the master.

While the question whether a servant is a vice-principal of the master is one partly of fact and partly of law, or a mixed question of law and fact, yet it is a proper subject to be submitted to the determination of the jury, and when properly submitted to the jury as a determinable issue upon sufficient supporting or conflicting evidence their finding is as conclusive upon that question as upon any other. LaBatt's Master & Servant, vol. 2, secs. 511-564a; Devine v. Tarrytown & I. Union Gas Light Co., 22 Hun, 26.

In this case such question was properly submitted by the trial court to the jury and they found the employee, Charles Huermann, to be the vice-principal of the defendant. It is assigned as error and made the subject of emphatic complaint that the court submitted the issue of vice-principal to the jury, the contention being that there was no evidence on the subject authorizing its submission.

The Court of Civil Appeals, after setting out at length and in detail the testimony of several witnesses taken from the record upon the issue of the vice-principalship of Charles Huermann, make this clear and succinct finding of fact upon the subject under discussion: "In the country shipping department Charles Huermann was foreman with power to supervise the work done in that department and with power to hire and discharge employees working in that department."

This finding of fact by the Court of Civil Appeals brings Charles Huermann within the rule definitely and authoritatively enunciated by this court in the case of Young v. Hahn, 96 Texas, 101, making him the vice-principal of the defendant below. A careful inspection of the record shows that the Court of Civil Appeals based its findings on this issue upon the testimony of witnesses whose credibility was considered and approved by the jury and we think such testimony, if believed by the jury, was amply sufficient to support the finding that Charles Huermann was plaintiff in error's vice-principal. It is not within the jurisdiction of this court to pass upon the credibility of the witnesses, or to assail the findings of fact by the Court

of Civil Appeals when there is evidence of sufficient probative force to establish such fact. The testimony upon which these findings of fact by the Court of Civil Appeals were made may be seen in the excellent opinion in that case by Chief Justice James. (Hugo, Schmeltzer Co. v. Paiz, 128 S. W., 912.)

Having determined from the findings of fact by the Court of Civil Appeals and the evidence in the record that Charles Huermann was the vice-principal of the defendant, we will next determine whether the injury and death of deceased was the proximate result of the performance of some work or act for defendant by the deceased while in the employment of defendant, and which work or act was in the furtherance of defendant's business and performed under the direction of defendant's vice-principal, and whether in directing the deceased to perform such work or act under the circumstances attendant upon the performance of such work or act by deceased there was negligence on the part of such vice-principal.

The record discloses that just prior to the accident in which deceased received his fatal injuries, defendant's vice-principal, Charles Huermann and the two porters, Bartolo Martinez and Henry McCulloch, were performing the work of moving about seventy-five cases of snuff from the first to the second floor of defendant's warehouse or place of business by means of a freight elevator that belonged to defendant and which was used for such purpose, and that they had placed the cases of snuff on a truck wagon and were in the act of rolling the truck on the platform of the elevator when it began to descend with the front wheels of the truck on the platform. One of the porters jumped into the elevator and by means of pulling one of the ropes attached to it for that purpose reversed the motion of the elevator, which began to ascend when the front wheels of the truck were caught between the floors of the building and elevator and there wedged. The cases of snuff were scattered over the elevator platform, and while the two porters under the direction of Charles Huermann were removing the snuff from the elevator the deceased, whose chief business was that of driver of a delivery wagon for defendant in connection with its wholesale business, was called from the basement by one Hartung, under whom he chiefly worked. When deceased reached the first floor from the basement, in the view of said Hartung and in the presence and at least with the tacit consent of Charles Huermann, defendant's vice-principal, he got down into the elevator and began work, assisting the two porters in removing the scattered snuff to the building floor. The proof does not show who directed the deceased to assist in this work, but it was shown by the evidence that deceased and the other drivers were expected and required to assist the porters in assembling and removing the goods in the building when they were not engaged in driving their delivery wagons, and that they customarily did such work as deceased was doing. After the snuff had been removed from the elevator, the record shows that the elevator was fastened or lodged, and that in order to discharge or unfasten it so that the work of taking the snuff to the second floor could be resumed, it was necessary to extricate or remove the truck wheels from their lodgment between the floors

of the building and elevator. The deceased in connection with the two porters was directed to pull out or extricate the truck wheels from the position before mentioned.

After the truck wheels had become wedged in between the floors of the elevator and building no inspection or investigation of the condition of the elevator was made by defendant; no precautionary steps were taken to prevent the rapid ascent of the elevator when released by the removal of the truck wheels; the elevator car and weights were not hung with ropes or chain blocks from the head-work so as to prevent the happening of the very thing that did happen when the truck wheels were pulled out by deceased and his assistant, the rapid and wild ascent of the elevator to the top of the building, by means of which the deceased was killed.

The contention that the elevator was a safe appliance for the use of defendant's servants and that it had been recently inspected is without any relevant force. That if it became disabled in the course of its use such defect was the result of the negligence of the fellow servants of deceased, is also without any relevant force. Concede that the elevator was in good working condition and had been properly inspected, and that the cause of its descent when the loaded truck was rolled upon it was due to the fact the brakes were not properly applied, and that the negligent application of the brakes was due to the negligence of a fellow servant of deceased. By reason of the improper application of the brakes the elevator began to descend when the truck was rolled upon its platform, and when the elevator was reversed its ascent was arrested by the falling of the truck wheels between the floor of the elevator and building. Up to this time no injury had been done any servant of defendant. But when the deceased was directed to pull out the truck wheels from their wedged position, in order that the elevator might be used in the furtherance of the master's business a different question arises involving defendant's liability for the death of deceased.

John D. Connelly, an expert witness, whose business it was to repair electrical elevators, testified as follows, as to the natural and invariable effect of reversing and arresting the ascent of such elevators as that in use by defendant: "When this truck got caught between the floor of the elevator and floor of the building, something was due to give way always—with any kind of an elevator—something is bound to break, and whenever an accident of that kind occurs, the weakest place in the machinery gives way, something is bound to go. When the truck got caught there, an accident was inevitable, couldn't be helped, and some part of that machinery had to break."

It appears from the testimony of this witness, which is not contradicted in the record, that when such an elevator as that in use by defendant is stopped in its ascent by truck wheels as in this case, when reversed as in this case, some part of such elevator was bound to break. This same witness testified as follows, on the subject of the proper way to have released the truck wheels and as to the dangerous character of the work in removing the truck wheels under the circumstances deceased was directed to remove them by

defendant: "If an electric elevator was ascending between the bottom of the shaft and the top, and was caught by two wheels of a truck fastened, and that elevator was in that condition, I wouldn't think it would be ordinarily safe, in my opinion, to go into that elevator and pull loose the obstruction that was holding it. In my judgment, as to the proper manner in which to have released that elevator, under those circumstances, I would have hung the car and weights both with ropes, chain blocks or something of that kind and we would have to take the chain blocks and hang the weights from the head-works. It would not have been proper or ordinarily safe, in my opinion, to have gone into that car under the circumstances and pulled the wheels loose that were obstructing it."

By this testimony, uncontradicted, the defendant stands convicted of culpable negligence. It is immaterial by whose negligence the elevator brakes were not properly applied, so as to have prevented it from going down when the loaded truck was rolled upon its platform. When the elevator was reversed by the porter pulling the proper rope and its upward movement stopped by the truck wheels before described, some portion of the machinery was bound to break, and it became dangerous and unsafe to the person removing the truck wheels without the precautionary measures suggested by the witness, or without some other adequate precautionary measures. Defendant was chargeable with the knowledge of the condition of said machinery, and the dangerous and unsafe character of the work in extricating the truck wheels as by it directed. If defendant knew or by the exercise of ordinary care might have known the condition of the elevator after it had been stopped in its upward movement by the truck wheels, or knew or by the exercise of ordinary care and diligence might have known the natural or probable consequences of arresting the upward motion of the elevator by other means than those provided for in the construction of the appliance, and that such probable consequence would be the breaking of some portion of the machinery of the elevator and rendering it unsafe as a place to work, it was chargeable with notice of the actual condition of the elevator at the time deceased was directed to remove or pull out the truck wheels from their place of wedging.

In directing the deceased to remove or assist in removing the truck wheels he was so directed by defendant's vice-principal, and therefore by the defendant itself, to perform a piece of work that was attendant with hazard and great danger, and being directed and required to go upon the elevator platform in order to perform the required work, deceased was not furnished a safe place in which to work, an imperative duty imposed by law upon defendant. The neglect of such duty on the part of the defendant, out of which proceeded injury and death to the deceased, renders defendant liable to respond in damages.

The suggestion that deceased in performing the work he was engaged in at the time of the accident assumed the risk of the injury which caused his death is not *tenable*. The doctrine of assumed risk is not applicable to the facts of this case. To justify the invocation of the doctrine of assumed risk in this case, it was incumbent upon

defendant to show that ordinary care and prudence was exercised to ascertain the condition of the elevator after it had become wedged by the truck wheels. The record is silent as to anything the defendant did in that respect after the obstruction of the elevator machinery. The injuries growing out of those accidents and casualties which the servant has impliedly agreed to risk, are such only as arise after the exercise of due care and diligence on the part of the master. Wood's Law of Master & Servant, sec. 348; Producers Oil Co. v. Barnes, 120 S. W., 1023.

It should be observed that at the time the elevator was lodged or disabled the deceased was not present and knew nothing of the condition of the elevator, and was not expected to know anything of its condition, or the dangerous character of the work he was directed to perform, or the unsafe place he occupied in removing the truck wheels. He came upon the scene after the lodgment of the elevator.

It is contended by plaintiff in error that the vice-principal, Charles Huermann, was acting beyond and not within the scope of his authority when he directed the deceased to take out the wedged truck wheels, and that by reason of such fact the defendant is not liable for the death of Paiz. This contention is not supported even by the testimony of defendant, as it was shown by Ralph Hugo that Charles Huermann had charge of the country shipping department, and that his duty was to superintend the filling of the different orders. That in taking the goods from the different floors it was his duty to be present and see that they (the porters) worked and that they put the goods in "correct stacks." That he had charge of the porters in the performance of this work.

Upon the testimony of defendant it is clear, as we think, that the vice-principal was acting within the scope of his authority in directing the porters and in seeing that the goods were properly moved and put in "correct stacks," and when the elevator, which was used for the purpose of taking the goods up and down for the specified purposes, became disabled by the falling of the truck wheels, it was within the scope of his authority and in the performance of a clear duty, to direct the releasing of the elevator and the taking out of the truck. This was more especially within the line of his duty as the evidence showed the truck wagon was also one of the instruments used in carrying on the work of the master in assembling the goods and in moving them from different parts of the floor to the elevator. To deny the superintendent or director of the shipping department the authority to direct the releasing of the truck from its position between the floors of the building and the elevator would in effect be equivalent to saying that if in rolling the truck from one part of the building to another the wheels should be caught in a crack of the floor and there fastened, that the superintendent was denied the authority to direct the loosening of such trucks, but should suspend work and report the matter to headquarters. Besides this, sight is lost of the fact that the defendant was present and acting in the person of its vice-principal.

In support of plaintiff in error's contention we are cited by its counsel to 12 Am. & Eng. Ency. of Law, 946, where will be found

the following general principles: "There can, of course, be no recovery under this statute unless the negligence is that of a person whose orders the plaintiff is bound to obey. To authorize a recovery under this statute, the injury must be the result of the negligent person giving the orders and of the plaintiff conforming to the orders. It has, however, been held that it was not necessary that the orders should be *per se* negligent, but if while in obedience to orders, injury arises through the negligence of the one giving the orders, it is sufficient."

"The law imposes upon the master certain duties which concern the safety of his servants, and, while he may, of course, delegate the duties to another, his doing so in no wise affects his responsibility for their proper performance. If one servant is injured by reason of the negligent performance of one of these duties by another servant to whom it has been delegated by the master, the master can not escape liability on the ground that the negligence was that of a fellow servant. In other words, where a servant is intrusted with the performance of one of the master's personal duties, he is, with respect to that duty, a vice-principal or representative of the master, who will be liable to another servant for the negligent performance by the vice-principal of the delegated personal duty to the same extent as for his own negligence."

The above enunciation of the law is in perfect harmony with the holding in this State upon that subject and impresses us as authority to sustain the position we maintain.

From the above authority it will also be observed that it is stated the law imposes upon the master certain personal duties which concern the safety of the servant. Referring to the same authority above quoted from under the head of Master & Servant, vol. 20, page 88, we find the following rule laid down upon the subject: "It is the duty of the master to use reasonable care to furnish his employees with a reasonably safe place of work and with reasonably safe and suitable machinery and appliances. The master's duty in this regard does not end here, but is a continuing one. The law imposes on him the further obligation of using reasonable care to keep such place of work and such instrumentalities in a reasonably safe condition, and this, of course, is to be accomplished by a proper and timely inspection for defects and the repair thereof."

We have given a careful consideration to all the assignments of error contained in the petition for writ of error, and have concluded that no material error has been committed in the rendition of judgment for plaintiffs. The pleadings are sufficient, and while the evidence is conflicting on many material points, such issues seem to have been fairly submitted to the jury and their finding is binding, under such circumstances, upon this court. It is meet to say that an exceptional degree of earnestness, research and legal learning has been bestowed on this case by the learned counsel for both sides.

It is the judgment of this court that the judgment of the Court of Civil Appeals be affirmed, and it is so ordered.

*Affirmed.*