MODERN ORDER OF PRÆTORIANS v. NELSON et ux.

(Court of Civil Appeals of Texas. Dallas. Dec. 13, 1913. Rehearing Denied Jan. 3, 1914.)

1. MASTER AND SERVANT (§ 187*)—INJURIES—FELLOW-SERVANT—VICE PRINCIPAL.

In an action against a private corporation, not a common carrier, for wrongful death of a servant, under Rev. Civ. St. 1911, art. 4694, subd. 2, giving an action for damages for injuries causing death when caused by the wrongful act, negligence, unskillfulness, or default of another person or corporation, their agents or servants, the question is whether the negligence resulting in death was that of a vice principal.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 422–426; Dec. Dig. § 187.*]

2. MASTER AND SERVANT (§ 189*)—"VICE PRINCIPAL"—WHAT CONSTITUTES.

To make a servant a vice principal, it is only necessary that he have authority to direct and supervise the work and to hire and discharge subordinate servants engaged in the work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 427–435, 437–448; Dec. Dig. § 189.*

For other definitions, see Words and Phrases, vol. 8, pp. 7313–7316, 7829.]

3. MUNICIPAL CORPORATIONS (§ 595*)—PUBLIC SAFETY—ORDINANCES—REGULATIONS OF ELEVATORS.

Under the provisions of the law giving the city of Dallas full power to enact ordinances to protect the lives, health, and property of the inhabitants, it could enact an ordinance requiring elevator operators to have had 10 days of actual experience under competent instruction and be 18 years of age before being employed to operate an elevator.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1321, 1322; Dec. Dig. § 595.*]

4. MUNICIPAL CORPORATIONS (§ 111*)—VALIDITY OF ORDINANCES—PARTIAL INVALIDITY.

Any invalidity in a provision of an ordinance regulating the use of elevators, requiring the operators to be at least 16 years of age, would not render invalid another provision requiring an operator to have had 10 days' actual experience under competent instruction before pursuing such occupation.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 245–256; Dec. Dig. § 111.*]

5. DEATH (§ 9*)—GROUNDS OF NEGLIGENCE.

To permit a recovery thereunder for a death caused by negligently employing an elevator operator who had not had 10 days' actual experience under instruction, as required by city ordinance, would not enlarge Rev. Civ. St. 1911, art. 4694, subd. 2, giving an action for damages for death caused by the "wrongful act, negligence, unskillfulness, or default of another."

[Ed. Note.—For other cases, see Death, Cent. Dig. § 11; Dec. Dig. § 9.*]

6. MASTER AND SERVANT (§ 189*)—VICE PRINCIPAL.

One who had authority to direct and supervise the work of all employés in an office building, as well as the elevators, and to hire and discharge such employés, was a vice principal as to an elevator operator, and hence his corporate employer was responsible for his negligent act in directing the operation of an elevator.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 427–435, 437–448; Dec. Dig. § 189.*]

7. MASTER AND SERVANT (§ 187*)—MASTER'S LIABILITY — NEGLIGENCE OF VICE PRINCIPAL.

Negligence of a vice principal in giving orders to a servant to do an act in a negligent manner was negligence of the corporate employer.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 422–426; Dec. Dig. § 187.*]

8. MASTER AND SERVANT (§ 286*)—INJURIES—JURY QUESTION—NEGLIGENCE.

Evidence, in an action for death of plaintiff's son, an elevator operator by the negligence of another operator in operating the elevator, held to make it a jury question whether the person having charge of the operators was negligent in directing the work to be done in a negligent manner.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.*]

9. MASTER AND SERVANT (§ 289*)—INJURIES—JURY QUESTION — CONTRIBUTORY NEGLIGENCE.

In an action for an elevator operator's death by the negligence of another operator in starting the car and crushing decedent, whether decedent negligently violated the employer's rules, resulting in his injury, held a jury question.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089, 1090, 1092–1132; Dec. Dig. § 289.*]

10. MASTER AND SERVANT (§ 267*)—INJURIES—ADMISSION OF EVIDENCE.

In an action for an elevator operator's death by the negligence of another operator in suddenly starting the machine down and crushing decedent, who was in the door, in which it appeared that the elevator bell rang about the time decedent entered the elevator, evidence as to whether decedent knew what the ringing of the bell meant was admissible, upon showing that he could have heard the bell.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 909, 911; Dec. Dig. § 267.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

11. APPEAL AND ERROR (§ 1056*)—HARMLESS ERROR—EXCLUSION OF EVIDENCE.

The exclusion of such evidence was not reversible error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4187–4193, 4207; Dec. Dig. § 1056.*]

Appeal from District Court, Dallas County; Kenneth Force, Judge.

Action by T. G. Nelson and wife against the Modern Order of Prætorians. From a judgment for plaintiffs, defendant appeals. Affirmed.

Harry P. Lawther and Dabney & Townsend, all of Dallas, for appellant. Spence, Knight, Baker & Harris, of Dallas, for appellees.

RASBURY, J. Appellees, parents of Guy Nelson, sued appellant in the court below for damages for negligently killing said Nelson while entering the elevator of appellant's building in Dallas, and recovered verdict and judgment for $7,500, from which this appeal is taken.

The negligence alleged in the petition on the part of appellant to have brought about the death of Nelson was in permitting an operator without previous experience to operate its elevator; in not instructing such inexperienced operator for a period of ten days at the hands of a competent person, as provided by city ordinance, how to operate the elevator; in failing to warn and instruct Nelson; in failing to prescribe and enforce rules for the protection of Nelson; in failing to close the door of the elevator which killed Nelson before starting same; in placing the elevator which killed Nelson in charge of an incompetent employé; in directing its employés to operate the elevator which killed Nelson in an unsafe manner. The complaint also alleged that appellant was a private corporation engaged in the business of life insurance and owned the building and the elevator therein, by which Nelson was killed, same being an office building occupied by numerous tenants in many kinds of business, which appellant had placed in charge of and under the management of one W. Speers, its vice principal, whose duty it was to manage the building and elevators, employ, instruct, train, and discharge appellant's servants, and who did employ and instruct the employés named in the petition, and who, in obedience to directions of said Speers, committed the wrongful acts, negligence, unskillfulness, and defaults that caused said Nelson's death. Appellant met the charges of negligence by the general demurrer, certain special demurrers to be hereinafter discussed, the general denial, and the special plea that Nelson's death resulted from his negligence and that of Rembert Bonner, his fellow servant, for which appellant was not responsible in law.

The first and second assignments of error complain of the overruling of appellant's general and special demurrer, which in substance pointed out that appellee's petition showing appellant to be a private corporation and that Nelson's death was the result of the wrongful act, negligence, unskillfulness, and default of the servant and agent of appellant, which was not alleged to be the proprietor or charterer or hirer of any railroad, steamboat, stage coach, or other vehicle for the conveyance of goods or passengers, no liability at law was shown by said petition for the reason that such allegations brought the case within the provisions of subdivision 2 of article 4694, R. S. 1911, commonly known as the death statute. This statute has been construed a number of times, and in our opinion the liability or nonliability of such as are included within said subdivision is now well settled under the old statute. (It is of course known that the statute was amended by a recent Legislature by adding to the words, "the wrongful act, negligence, unskillfulness or default of another," the words, "person or corporation, their agents or servants.")

[1] Under the various cases construing the statute, the initial and preliminary inquiry in all cases brought under said subdivision, when the suit is against a private corporation, not a common carrier, as it is here, in order to fix liability, is: Was the negligence resulting in death due to the wrongful act, negligence, unskillfulness, or default of a vice principal? And in that respect it may be said that the question of vice principal or not is one of fact for the determination of the jury under correct instructions, and further that there is no inconsistency in the dual relation of servant and vice principal when applied under said subdivision. In the case at bar it was alleged that appellant was a private corporation, and that one Speers was its general manager, having conferred upon him the right and duty of managing appellant's building and directing and supervising the work of all employés in the operation of its elevators, together with authority to hire and discharge appellant's servants who operated said elevator, and that one of the employés so hired by said general manager to operate said elevator did so negligently under the direction and control and supervision of said Speers, whereby said Nelson was killed.

[2] Such allegations, in our opinion, are amply sufficient in alleging facts which, if true, constituted Speers the vice principal or alter ego of appellant, since the most that has ever been held necessary to establish the servant a vice principal is that he have authority to direct and supervise the work of those under him and to hire and discharge such subordinate servants. Hugo, Schmeltzer & Co. v. Paiz, 104 Tex. 563, 141 S. W. 518, and cases cited.

---

The third and fourth assignments of error complain of the overruling of certain special demurrers touching the validity of an ordinance of the city of Dallas, alleged by appellee to have been violated by appellant, which requires, among other things, that operators of elevators shall have had 10 days' experience in running an elevator under the instructions of a competent person before being permitted to engage in such occupation. The proposition is urged that the ordinance is void because prohibitory. In support of this proposition we are cited Ex parte Epperson, 61 Tex. Cr. R. 237, 134 S. W. 685, 37 L. R. A. (N. S.) 303. The case, in our opinion, is not applicable. The point there decided was that, since the Legislature only authorized the town of Clarksville to "regulate" hackmen and like occupations, an ordinance making it unlawful for persons under 16 years of age to operate any sort of motor vehicle was invalid. The court did not decide that an ordinance prohibiting persons under 16 years of age pursuing a given occupation was a prohibition of the occupation, but that the right to regulate by the grant from the Legislature did not include the right to prohibit as well.

[3] It was shown by the petition in this case that the city of Dallas, by grant from the Legislature, had full authority to enact and enforce ordinances for the protection of the lives, health, and property of its inhabitants, and that by virtue of said authority the ordinance in question had been enacted. The ordinance prescribes the method and manner of building elevators, their shafts, cages, etc., as well as the qualifications of all operators thereof. It requires, as we have said, 10 days' actual experience on the part of operators under competent instruction, and that he shall be 18 years of age. We conclude the ordinance is not void. It is hardly necessary to discuss the reasonableness of the provision requiring some experience or instruction at the hands of a competent person before permitting any one to operate an elevator. Such a provision can have no other purpose than to protect the lives and health of the city's inhabitants. It is known that numbers of persons daily use the elevators of the large office buildings, and it seems to us that the requirement that the operator of such elevators shall have some knowledge of the operation of the same is not only not unreasonable but commendable and necessary as well.

[4] Whether or not that provision of the ordinance which denies to persons under the age of 16 years the right to pursue such occupation is void as to such person for the reason that it interferes with the liberty or the right to pursue a lawful occupation for the support of life, it is not necessary to decide, since Rembert Bonner, the operator, was of the required age, and since, if illegal for the reasons stated, the remaining portion of the ordinance requiring an experience of 10 days is not subject to the objection urged and is not dependent at all upon the provision with reference to the age of those pursuing such occupation.

[5] Nor do we think, as urged by appellant, that the ordinance requiring experience on the part of elevator operators in any respect enlarges, alters, or aids subdivision 2 of article 4694, R. S. 1911, under which this suit is authorized. That subdivision permits those entitled to sue to recover damages where death results from the "wrongful act, negligence, unskillfulness, or default of another," etc. These are general terms and are to be applied in the light of judicial determination, statutory enactment, or city ordinance defining negligence, unskillfulness, etc., except that, in the event such city ordinance should conflict with any general law or rule of decision, it would be required to give way to such general rule. The latter condition does not exist here.

We have disposed of the assignments of error which attack the sufficiency of the petition without first making a statement of the facts in the case for the reason that the arrangement of the briefs of the parties made such course necessary. In relation to the facts, it may be said that the evidence supports the following conclusions: Appellant is a private corporation engaged in the life insurance business and owns a 16-story office building in the city of Dallas. W. Speers was employed by appellant to superintend said building; his duties being to lease the offices, look after the welfare of the tenants, direct all other employés in their duties about the building, including the operation of the elevators, and to employ and discharge all employés at will. He employed both Guy Nelson, deceased, and Rembert Bonner, who was operating the elevator at the time Nelson was killed. Speers knew when he employed Bonner that he was without prior experience in operating an elevator. The city ordinances provide for 10 days' prior instruction under a competent person before being put in charge of a public elevator. Bonner only received one day's training, but at the time Nelson was killed had been operating the elevator in appellant's building for a period of not less than 30 days. Speers directed Bonner and all other elevator operators in operating the elevator to start the elevator up or down and throw the door for the purpose of closing it simultaneously. The city ordinance provided that elevator doors should be securely closed before starting the elevator. The purpose of such practice was to save time. All instructions as to the management and operation of the elevators were given orally by Speers from time to time. There were no printed or published rules. There were but two witnesses to the killing of Guy Nelson; one being Rembert Bonner and the other Ben Boisseau. Bonner was engaged in operating the eleva-

tor. Guy Nelson, who was also an operator in appellant's employ, was on the fifteenth floor of the building, resting before again taking up his duties. With him was Boisseau, who was being instructed how to operate the elevator. When Bonner would reach the fifteenth floor, according to his testimony, where Nelson and Boisseau were, he would stop the elevator and open the door until the elevator bell signaled for him to go down. During this time Bonner and Nelson engaged in an argument concerning the distance from Dallas to Orphans' Home; Bonner maintaining the distance to be five miles and Nelson asserting it was eight miles. Neither was angry, according to Bonner, during the argument. On the trip down previous to the accident Nelson in play prevented Bonner from closing the sliding door to the elevator as he started down by inserting his foot ahead of it. Bonner heard the door close after he started down and found it closed on his return. At the time of the accident the door to the elevator was again open and the boys had resumed their argument concerning the distance to Orphans' Home. Nelson, according to Bonner, stepped toward the elevator, saying "Eight," and Bonner replying, "Five." Bonner was not looking at Nelson as these words were passed but looking in the direction of the other elevator shaft; and just about the time the words "eight" and "five" passed between them, and while Bonner was looking toward the elevator shaft, the bell rang, and in response thereto he started the car with one hand and closed the door with the other, without looking in the direction of Nelson. Bonner further testified that Nelson started in just as the bell rang, and that Nelson's body prevented the door from closing, and that he was not looking in Nelson's direction when he started into the elevator, but down the shaft. Boisseau, who also testified in the case, varies to some extent from Bonner. He says Bonner was not in the elevator, when arguing with Nelson as to the distance to Orphans' Home, but was on the outside in the hall. He says while the boys were engaged in the discussion Bonner, in play, said Nelson was a "liar" and stepped into the elevator he was operating, and that Nelson in like good humor said, "I will get you," and started into the elevator which was then in motion and was three feet on its way down and the elevator door closed, except for a distance of three or five inches, and that the accident was caused by Nelson inserting his foot into the open space of the door.

The foregoing is in substance the material facts adduced upon trial relative to the manner of the killing, except to add that Nelson was caught by the descending car and crushed to death.

The sixth assignment of error complains of the court's main charge, which in substance submits to the jury whether Speers was the vice principal of appellant, and au-

thorizes the jury if he was, and as such was guilty of the various acts of negligence in directing the operation of its elevators and the employment of elevator operatives alleged by appellees, and the doing of such things was a failure to exercise ordinary care, etc., to find for appellee. No fault is found with the charge on the ground of its correctness, if applicable to the facts in the case. The point made and the proposition asserted is that Nelson having been killed by the servant of a corporation liable only under subdivision 2 of article 4694, R. S. 1911, and appellant being under no legal duty by said subdivision to furnish either competent, careful, or skilled servants, no liability exists, and the charge submitting liability was error. In several quite recent cases the Supreme Court has, we think, very clearly settled all question about what facts are necessary to fix liability against corporations covered by said subdivision 2. Hugo Schmeltzer & Co. v. Paiz, supra; Sullivan Sanford Lumber Co. v. Cooper, 105 Tex. 21, 142 S. W. 1168; Commerce Cotton Oil Co. v. Camp, 105 Tex. 130, 145 S. W. 902. In the Cooper Case it was said that the effect of the subdivision was to "charge the corporation with liability for death caused by the wrongful act, negligence, unskillfulness, or default of its vice principal, for in law such officer or agent is the corporation when exercising its authority." Thus as we have said in disposing of the first and second assignments which attacked the sufficiency of appellant's petition, the question always first to be determined is: Was the person, whose wrongful act, negligence, unskillfulness, or default caused the killing, a vice principal? If a vice principal, then all question of servants or agents is eliminated for the very cogent reason that the act of the vice principal is the act of the corporation itself. As we have also said at another place in this opinion, whether one claimed to be a servant, agent, or officer of the corporation, is a vice principal is a question of fact.

[6] Whatever the position Speers had with appellant may have been denominated, he was in fact a vice principal, since it is not disputed and was affirmatively shown upon trial that he was charged with the duty and had the authority to direct and supervise the work of all employés of appellant's building and elevators, as well as to hire and discharge such subordinate employés. Accordingly Speers was appellant's vice principal at the time of the killing and will be treated as such here. We add by way of emphasizing the point, as suggested by the Cooper Case, that, Speers, being a vice principal, appellant is liable for his acts to the same extent that Speers would be if he owned the building and elevators and had done the same acts for himself. In the Cooper Case the application of the rule is illustrated by reference to the Paiz Case as follows: "The elevator became fastened in such way that to release it, except in

a certain manner, would necessarily cause it to shoot up to the top (of the shaft). The vice principal ordered the elevator to be released in a negligent manner, which was done as directed, and it was suddenly and very rapidly carried up, catching Paiz's leg and thus injuring him."

[7] Applied in the case at bar we have Speers, the vice principal, the corporation itself, directing its employés to operate the elevator negligently. The servant does so, and a fellow servant is injured, not by his negligence, but by that of the corporation, since he did not negligently observe orders of the master but because the very orders given the servant were negligent. Bonner was not negligent in operating the elevator as he did, but Speers, the corporation, was negligent in directing him to operate it as he did. The case at bar is distinguished in the facts from the Cooper Case in that in that case the servant negligently did a thing the vice principal had not directed him to do, while here the servant did the very thing the vice principal told him to do in the manner directed; and, the manner of doing it being negligent, it was the act of the vice principal and not that of the servant. Entertaining the views just stated, we are of opinion that the court correctly submitted the issue to the jury.

[8] As to whether the evidence supported the several issues of negligence, our duty is solely to determine whether the record discloses evidence sufficient to raise a question of fact for the determination of the jury. We have detailed in substance the facts surrounding the accident, and from those facts, and the legitimate inferences to be deduced therefrom, we conclude the facts were sufficient to authorize the submission of the issues to the jury.

It will not be necessary to discuss appellant's seventh assignment of error, which urges that appellant is not liable for the negligence of its servants under the subdivision of the statute already quoted, since, while we admit the soundness of the legal proposition, we hold that under the facts the acts of negligence were the acts of the corporation, through its alter ego, and hence a different rule prevails.

Appellant's eighth assignment of error complains of the refusal of the court below to instruct the jury at its request to find for defendant, if they believed from the evidence "that the accident and consequent death of Guy Nelson was directly and proximately caused by a violation of any of the rules prescribed by the defendant for the regulation and conduct of the employés who operated the elevators," by either Nelson or Bonner or both of them. The pleading of appellant at most charges that prior to and at the time of the accident Nelson was "interfering" with Bonner in the performance of his duty, which of course is deduced by the pleader from the facts and circumstances detailed in the pleading, and which are in substance the facts stated by us as preceding the accident. It is not alleged that Nelson was violating any rule of appellant in awaiting his time to take up his duties upon the fifteenth floor of the building, or in engaging in conversation or argument with Bonner when he stopped the car on said floor, or that it was in violation of any rule for Bonner to stop his car. Thus it can hardly be said that any rules had been properly pleaded. The proof adduced under these allegations went no further than the allegations with the exception of showing that one other employé did not engage in such discussions as took place between Bonner and Nelson. Besides, the charge is insufficient, and that fact should control in that it makes the violation of such rules negligence per se.

[9] It is for the jury to say whether, under all the facts and circumstances, it was negligence on the part of Nelson in violating appellant's rules, assuming in this statement that the evidence showed such violation.

The ninth assignment of error complains of the refusal of the court to direct a peremptory verdict for appellant, if the jury believed Nelson was killed as the direct and proximate result of the wrongful act, negligence, carelessness, unskillfulness, or default of Bonner. What we have said in the preceding portion of this opinion disposes of the question here raised and renders further discussion unnecessary.

[10, 11] The eleventh assignment of error relates to the exclusion of testimony and the refusal of the trial court to permit the witness Bonner to say whether or not Guy Nelson knew what the ringing of the elevator bell meant; it being shown that the bell rang either just before or simultaneously with Nelson's entry into the elevator at the time of the accident, and that the ringing of the bell was the signal for the elevator to go down for passengers. It occurs to us that it would have been proper to have permitted the witness to testify, if he knew, whether Nelson understood the significance of the ringing of the bell after first showing that he heard or could have done so. At the same time the value of such testimony, if it had been admitted, is hardly to be seen and the injury done by its exclusion is less perceptible. In no event can it be made to appear that its exclusion was reversible error.

The judgment of the court below is affirmed.