STONE & WEBSTER ENGINEERING CORPORATION v. GOODMAN et al.

(No. 1309.)

(Court of Civil Appeals of Texas. Texarkana. May 12, 1914. Rehearing Denied May 21, 1914.)

1. MASTER AND SERVANT (§ 137\*)—LIABILITY FOR INJURY TO SERVANT — SAFE PLACE TO WORK.

Plaintiff's intestate was an employé of defendant, an engineering company, which was engaged in stringing an overhead feed wire for an electric car, and, at the time of his death, had charge of a team of mules hitched to the forward end of the wire to drag it along and pull it off the reel, which was located one half mile away. The reel having become exhausted, the men in charge thereof, after starting the signal along the line notifying deceased to quit pulling, "snubbed" the wire, or tied it around a pole, preparatory to attaching it to another reel. Deceased never received the signal, and consequently kept pulling until the clevis which fastened the end of the singletree to the doubletree broke, causing the doubletree to fly back, striking deceased in the head and killing him. *Held*, that it was the primary and nondelegable duty of defendant to exercise ordinary care to distribute a sufficient number of men along the highway for the purpose of transmitting signals from one end of the line to the other, since the supplying of such line of communication was essential to the safety of deceased.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 269, 270, 273, 274, 277, 278; Dec. Dig. § 137.\*]

---

\*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

2. MASTER AND SERVANT (§ 106*)—LIABILITY FOR INJURY TO SERVANT — DUTY TO FURNISH SAFE APPLIANCES.

Where a master hired a team from a third party and placed a servant in charge as driver, it was the master's duty to exercise ordinary care to furnish such servant a reasonably safe doubletree, the master being as much responsible for its condition as though it were its own property.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 193–198; Dec. Dig. § 106.*]

3. TRIAL (§ 203*)—INSTRUCTIONS.

There was no error in refusing defendant's requests instructing the jury to find for it as to certain acts of negligence set forth in the petition, where the court did not make those allegations grounds of recovery in the instructions which he gave.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 477–479; Dec. Dig. § 203.*]

4. EXCEPTIONS, BILL OF (§ 8*)—SUFFICIENCY.

Bills of exceptions complaining of the admission of testimony, not showing what testimony was objected to, were too indefinite to be considered.

[Ed. Note.—For other cases, see Exceptions, Bill of, Cent. Dig. § 10; Dec. Dig. § 8.*]

5. TRIAL (§ 253*)—INSTRUCTIONS.

In an action for the death of a servant, a teamster, caused by a clevis breaking, causing the doubletree to fly back and strike him, a request that, if the team was not controlled by defendant, but under the control of the servant, and that if defendant did not assume the custody and inspection of the doubletree, but left such to the servant, and if the servant was an experienced teamster and familiar with the doubletree, to find for defendant, was properly refused, because ignoring another ground of liability submitted, and also because there was no evidence that the servant had the exclusive control of the doubletree, and that it was his duty to inspect it.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613–623; Dec. Dig. § 253.*]

Appeal from District Court, Dallas County; J. C. Roberts, Judge.

Action by Alva Goodman and others against the Stone & Webster Engineering Corporation. From a judgment for plaintiffs, defendant appeals. Affirmed.

Lassiter, Harrison & Rowland, of Ft. Worth, for appellant. Carden, Starling, Carden, Hemphill & Wallace, of Dallas, for appellees.

HODGES, J. In June, 1912, J. W. Goodman died as the result of injuries received while employed in the service of the appellant, and this suit was instituted by his wife and children to recover the statutory damages. A trial before a jury resulted in a verdict in favor of the plaintiffs below for the sum of $3,000.

The facts show that at the time the injury referred to was inflicted the appellant was engaged in stringing an overhead feed wire for an electric car line running from Dallas to Waxahachie. Preparatory to being used, the wire had been wound on a reel, and, in being placed in position, was unwound and pulled over cross-arms attached to upright poles set in the ground along the right of way. A team of mules driven by Goodman was on this occasion hitched to the forward end of the wire, and pulled the wire from the reel. At intervals the wire was by other employés thrown over the cross-arms, and then more of it was unwound as before. On this occasion the wire was being strung along one of the streets in Oak Cliff, and had progressed till practically all of the wire had been pulled from the reel and the employés in charge of that end were ready to tie on to the next preceding strand. The testimony shows that this strand of wire to which the team was hitched was approximately a half mile long. Smith and Vaughan, two employés, were in charge of the reel. When Smith discovered that the wire was nearly off the reel, he gave a signal to Vaughan, to be passed on down the line, indicating that Goodman was to stop. Vaughan testified that he passed the signal on to another employé by the name of Behrens. There is no evidence as to whether Behrens transmitted this signal or not. But about this time the team ceased to pull; and Smith and Vaughan, thinking that this stop was due to Goodman's having received the signal, began to connect the two ends of the wire. The stop, however, lasted only a very few minutes, when the wire again began to move. Vaughan then ran out into the street, several feet distant, and gave another signal. Smith, in the meantime, "snubbed" the wire; that is, he tied that end around a post, so that it could not be moved. It appears from the evidence that Goodman never, in fact, received any of the signals. He was something like a half mile distant from Smith and Vaughan, and depended upon signals for notice as to when they wanted him to stop. It also appears that he was approaching at that time a crossing over the line of the Dallas & Ft. Worth Interurban Railroad. His team was connected with the wire by means of a long rope tied to the doubletree. In order to pull the wire as far as possible without crossing the Dallas & Ft. Worth Interurban, he would pull until his team reached the track, then stop and shorten the rope, and pull again up to the track. Goodman, being in ignorance of the fact that the wire had been "snubbed" at the other end of the line, continued to urge his mules forward. One of them pulled his end of the doubletree ahead of the other. The singletree of the forward mule was fastened to the end of the doubletree by means of a clevis, and while in this position the clevis pulled out, and the end of the doubletree flew back and struck Goodman, inflicting the injuries from which he died.

The evidence justifies the conclusion that the stop which occurred immediately after the first signal given by Smith and Vaughan was for the purpose of shortening the rope, and not in response to those signals.

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

It is claimed that the appellant was guilty of negligence in two respects: (1) In failing to furnish and place a sufficient number of men on that occasion for the transmission of the signals; (2) in failing to furnish a reasonably safe doubletree for the performance of the work in which Goodman was then engaged.

[1] The first assignment of error complains of the following portion of the court's main charge: "It was the duty of the defendant to exercise ordinary care to furnish, and so place, a reasonably sufficient number of men along the line of wire being stretched to transmit signals in a reasonably prompt manner from the reel to the deceased, J. W. Goodman, at the time he was injured; and a failure, if any, to exercise such care is negligence as that term is hereinafter used." Before this charge was read to the jury, and in compliance with the statutory requirements, appellant presented substantially the following objection: That this paragraph makes the matter of distributing or placing the men to receive and transmit signals on that occasion a primary and nondelegable duty of the defendant; whereas, according to the true rule, the defendant would discharge its primary and nondelegable duties by making and establishing a reasonably safe and sufficient system and method for doing that character of work, and by furnishing on that occasion a reasonably sufficient number of competent men. In other words, it is claimed that the matter of distributing and placing the men for the purpose of transmitting signals was a mere detail of the work, which might be intrusted to a subordinate employé, and was not one of the nonassignable duties of the master. It is conceded that, in order to sustain a recovery in this case, the evidence must show negligence in the performance of some of the nonassignable duties due of the master. The question then is: Was it the primary duty of the appellant on this occasion to exercise ordinary care to distribute a sufficient number of men along the highway on which the wire was being placed, for the purpose of transmitting signals from one end of the line to the other? It is the primary duty of the master to exercise ordinary care to make the place where the servant is to work reasonably safe, and in the performance of that duty he should adopt such precautions as ordinary prudence would suggest, taking into consideration the existing conditions. If in this instance the supplying and placing of a sufficient number of men to establish a line of communication by signals from one end of the wire to the other was essential to the safety of Goodman while in the performance of his work, then it devolved upon the appellant to exercise proper care to establish that line. That duty could not well be performed without furnishing and also placing the men in proper position for the purpose of carrying into effect the end in view. Hugo Schmeltzer & Co. v. Paiz, 104 Tex. 563, 141 S. W. 518: Railway Co. v. McElyea, 71 Tex. 386, 9 S. W. 313, 1 L. R. A. 411, 10 Am. St. Rep. 749; Burns v. Merchants' & Planters' Oil Co., 26 Tex. Civ. App. 223, 63 S. W. 1063; Labatt on Master & Servant, § 576. There is no evidence in the record before us that the appellant had on this occasion established any definite system for the transmission of signals or for the distribution of the men. The work was being carried on under the immediate supervision of W. J. Griggsby, appellant's superintendent and a vice principal. Hence, if there was an insufficient number of men or an improper distribution of them, the court had a right to infer that it was due to the failure of Griggsby to place them as they should have been. In stringing wire over a long distance, necessarily involving constant changes in the attendant physical conditions of the surrounding country, there could be no fixed rule as to the number of men, their location, and the distance between them. A proper distribution of the men required the exercise of a certain amount of discretion and authority, which should be performed either by the master or by some representative. The fact that this duty had been intrusted to some employé does not relieve the master from his primary obligation. N. P. Ry. Co. v. Peterson, 162 U. S. 346, 16 Sup. Ct. 843, 40 L. Ed. 994; Jacksonville Ice & Elec. Co. v. Moses, 134 S. W. 379. If the men, after having been distributed, or their places designated, by the master or his representative, had failed to observe and transmit the signals, a different question would be presented. We do not think the charge is subject to the objection made.

[2] The court also gave the following as a part of his main charge: "It was also the duty of the defendant to exercise ordinary care to furnish the deceased, J. W. Goodman, a reasonably safe doubletree to do the work in which he was engaged at the time of such injury, and a failure, if any, to exercise such care is negligence, as that term is herein used." This was objected to upon the ground that it imposed absolutely on the defendant the duty to furnish Goodman a "reasonably safe doubletree," without making any qualifications because of the fact shown by the evidence that the doubletree was not, in fact, furnished or to be inspected by the defendant company, but was owned and furnished by A. A. Barnes, or by Goodman, together with the team, wagon, harness, and the teamster. The testimony shows that A. A. Barnes was a brother-in-law to the deceased; that the team being used upon that occasion, as well as the wagon and the doubletree, was the property of Barnes. On the 1st day of January preceding the injury Barnes turned the mules and appliances over to Goodman to work. Barnes fed the team, and gave Goodman one-half of the compensation received. He gave no directions to

Goodman, and had no superintendence over him or the mules while they were at work. Barnes himself had made the doubletree, for use on his wagon, about a month before he delivered it to Goodman, and thought it a good implement when he made it. Griggsby, appellant's superintendent, testified as follows: "This was Barnes' team. I suppose Mr. Goodman was employed by Mr. Barnes, but I don't know anything about that. Mr. Goodman was not working for my company—well, in a way he was, too. As I said before, whichever one of them—either he or Barnes—that happened to be there got the check. The check was written in Mr. Barnes' name. Barnes hired the team driver for the company. The company dealt with Barnes. I suppose that doubletree was the property of Barnes; it was not the property of the Stone & Webster Engineering Corporation. * * * This $4 a day that we paid to Mr. Barnes covered the team and driver. We did not pay the driver; we paid $4 per day to Barnes, and he furnished the team and driver and other apparatus that he needed." Among other things, the defendant below pleaded that the deceased was not directly employed by it, but was in the employ of Barnes; that defendant made an agreement with Barnes, by the terms of which he was to furnish to the defendant a team, harness, and man and doubletree, with the necessary and usual appliances, for the purpose of doing the character of work that was in progress at the time of the fatal accident, and also such other work along the defendant's right of way as involved the use of a team; that Barnes was to receive and did receive from the defendant a fixed and agreed compensation per day for such team, equipment, and man; that the deceased was to receive the wages for his labor from his employer, Barnes, and not from the defendant. It was further alleged, in substance, that Goodman, under his contract with Barnes, was to have the charge, care, and control of the team and doubletree. The question here is: Was it the duty of the appellant to see that the doubletree was safe for that particular use, or did Goodman assume that duty himself? The only inference to be drawn from the pleadings and the evidence is that appellant procured the doubletree from Barnes and paid Barnes for its use. Appellant is therefore in the attitude of having furnished that appliance to Goodman, and is as much responsible for its condition as if the doubletree were a part of its own property and supplied from its own stock. Texas Traction Co. v. Morrow, 145 S. W. 1069; 1 Labatt on Master and Servant, § 172. If Goodman had himself furnished the doubletree as a part of the equipment for which he received a fixed compensation, the situation would have been different. We do not think this charge is subject to the objection made. No objection was raised up-

on the ground that the doubletree was a simple implement, one which it was unnecessary to inspect, or that the situation of the parties was such that no inspection was required by the employer. Under the statute in force at the time this case was tried, we are restricted to the consideration of the very objection urged before the charge was read to the jury.

[3] The appellant requested a number of special charges, which were intended to instruct the jury to find for defendant as to certain acts of negligence set forth in the appellee's original petition. The court having failed to make those allegations grounds of recovery in the instructions which he gave, there was no affirmative error in refusing the special instructions requested.

[4] Appellant also complains of the admission of the testimony of the witness Vaughan. The bills of exception reserved on the trial are so indefinite that we are unable to determine exactly what testimony was objected to. They are really too general to be considered. Railway Co. v. Leak, 64 Tex. 656. Moreover, no testimony subject to the objection made is referred to. St. L. S. W. Ry. Co. v. Boyd, 56 Tex. Civ. App. 282, 119 S. W. 1154.

[5] Appellant requested the court to give the following special charge: "If you should believe from the evidence that the team, harness, doubletree, and singletrees were not owned, possessed, or controlled by the defendant, while connected with defendant's work, in the possession and charge of J. W. Goodman and under his care, control, and management, and if you should further so believe that, to the knowledge and with the acquiescence of J. W. Goodman, the defendant company did not assume the custody, keeping, and inspection of the mules and doubletree, but left such matters to Goodman himself, and if you should further believe that said Goodman was an experienced teamster, and was well acquainted with said team and doubletree, and was in as good position, and was as well able as any one else to know and judge of the strength and sufficiency of said doubletree and of the strength, qualities, and disposition of the mules, and if you further so believe that the doubletree was defective, and that the accident in question was proximately caused by such defect, and would not have happened but for such defect, then you are instructed to find for the defendant." This charge was objectionable in several respects. In the first place, it ignored the other ground of liability submitted by the court based upon the failure of the appellant to furnish and properly distribute a sufficient number of men for the purpose of transmitting signals. It is further objectionable because it is predicated upon an assumption that there is evidence tending to show that Goodman had the exclusive control and management of the doubletree, and

that it was his duty to inspect the same. There is no such evidence in the record.

A number of other special charges were requested and refused, which, if given, would have been in conflict with the main charge of the court. There was no error in refusing them.

The judgment is affirmed.