Kimberly WITTY, Individually and as Surviving Parent of Baby Witty, a Nonborn Child, Petitioner,

v.

AMERICAN GENERAL CAPITAL DISTRIBUTORS, INC., Respondent.

No. C–4662.

Supreme Court of Texas.

Feb. 25, 1987.

Rehearing Denied May 6, 1987.

Michal W. Melton, Jeffrey M. Stern, Stern & Hirschfeld, Houston, for petitioner.

B. Lee Ware, Michael G. Terry and Frank W. Mitchell, Vinson & Elkins, Houston, for respondent.

ROBERTSON, Justice.

Kimberly Witty sued American General Capital Distributors, Inc. under the Texas Wrongful Death Act, Tex.Civ.Prac. & Rem. Code Ann. § 71.002, 1985 Tex.Sess.Law Serv. 7159 (Vernon) (formerly Tex.Rev.Civ. Stat.Ann. art. 4671); the Survival Statute, Tex.Civ.Prac. & Rem.Code Ann. § 71.021, 1985 Tex.Sess.Law Serv. 7162 (Vernon) (formerly Tex.Rev.Civ.Stat.Ann. art. 5525), alleging damages for the death of her fetus; and alternatively alleging property damage as a result of the destruction of her chattel, the fetus.

The trial court held that Witty's claims were barred as a matter of law because there was no live birth. Summary judgment was granted in favor of American General. The court of appeals held that Witty had a wrongful death cause of action and reversed that part of the trial court judgment holding to the contrary. 697 S.W.2d 636. On Motion for Rehearing, the court of appeals also held that Ms. Witty's claim for mental anguish suffered as a result of the loss of her fetus was not barred by recovery of Worker's Compensation benefits since it was not mental anguish resulting from her own physical injuries. We affirm that part of the judgment of the court of appeals which denied the survival cause of action. We reverse that part of the court of appeals' judgment which allowed the wrongful death cause of action and the common law emotional distress action.

### Wrongful Death Claim

In 1971, we held that live birth was required for a child to have a cause of action for prenatal injuries. *Yandell v. Delgado*, 471 S.W.2d 569 (Tex.1971). Similarly, where there has been no live birth, the clear, unambigious language of the Wrongful Death Act precludes recovery for the death of a fetus. The recent codification of the Wrongful Death Act provides recovery for "damages arising from an injury that causes an *individual's* death." Tex.Civ.Prac. & Rem.Code Ann. § 71.002(b) (emphasis added). Prior to the codification, the Act provided recovery of "damages on account of the injuries causing the death of any *person.*" Tex.Rev. Civ.Stat.Ann. art. 4671 (Vernon Supp.1941– 1985) (emphasis added). The legislature did not intend any substantive change in the Act by substituting the word "individual" for the word "person" in the recodification. Tex.Civ.Prac. & Rem.Code Ann. § 10, 1985 Tex.Sess.Law Serv. 7219 (Vernon). Furthermore, we hold that the legislature did not intend the words "individual" or "person" to be construed to include an unborn fetus.

A wrongful death cause of action is purely a creature of statute. The Texas Wrongful Death Act, similar to those of most states, was patterned after Lord Campbell's Act, The Fatal Accident Act, 9 & 10 Vict., ch. 93 § 1 (1846). *Sanchez v. Schindler*, 651 S.W.2d 249, 251 (Tex.1983). Prior to the passage of Lord Campbell's Act, there was no statutory or common law cause of action for wrongful death.

As we noted in *Sanchez*, "because the difficulties in reducing the refinements of tort law doctrines into statutory form often result in legislation which is either underinclusive or overbroad and which is frequently couched in ambiguous terms which the court must interpret, judicial decision is the best way to develop tort law." *Id.* at 252. Nevertheless, we must determine whether the legislature intended an unborn fetus to be included within our wrongful death statute. And, although our wrongful death statute is remedial in nature and must be liberally construed, we may not rewrite the statute in the guise of construing it.

We find nothing in the legislative history to demonstrate an intent that an unborn fetus be embraced within the scope of the statute. As the dissent so aptly stated in *Presley v. Newport Hospital*, 117 R.I. 177, 365 A.2d 748, 756 (1976) (Kelleher, J., dissenting), such conclusion is "in no way dependent upon whether a fetus is a person in the philosophical, theological, or scientific sense, nor is my belief based upon the

Supreme Court's ... pronouncements in the area of abortion." Despite the fact that "we have made great strides in the field of the sciences and we have read with great respect the writings of learned philosophers and theologians, we [must] remember that such individuals cannot create a right of action at law, for this is the job of the Legislature." *Id.*

In *Yandell* we recognized that until there is a live birth, there is no cause of action for personal injuries to the fetus. Section 71.003, Tex.Civ.Prac. & Rem.Code, provides for application of the Wrongful Death Act, stating that "[t]his subchapter applies only if the individual injured would have been entitled to bring an action for the injury if he had lived." Tex.Civ.Prac. & Rem.Code § 71.003(a), 1985 Tex. Sess.Law Serv. 7160 (Vernon). The fetus has no cause of action for the injury, until subsequent live birth. Under the clear language of the statute, there is no cause of action for death where there would be no cause of action for injuries. Therefore, since there is no cause of action for injuries to a living fetus, there can be no cause of action for death of a fetus.

This court has recognized the fetus as having an existence separate from its mother. *Leal v. C.C. Pitts Sand & Gravel Co.,* 419 S.W.2d 820 (Tex.1967). In *Leal,* this court allowed a cause of action for prenatal injuries where the child was born alive. *Id.* at 822. The common law has recognized the separate existence of a fetus for purposes of inheritance. However, the universal rule, as well as the rule in Texas, is that such ability to take was contingent upon the child's subsequent live birth. *Nelson v. Galveston, H. & S.A. Ry. Co.,* 78 Tex. 621, 14 S.W. 1021 (1890); *see also Justus v. Atchison,* 19 Cal.3d 564, 139 Cal.Rptr. 97, 106, 565 P.2d 122, 131 (1977).

In view of the common law rule that the rights of a fetus were contingent upon live birth, we feel that had there been the legislative intention to create a wrongful death action for an unborn fetus, the legislature would have specifically so stated. The plaintiff has not directed our attention to any evidence of legislative intent to include an unborn fetus within the scope of our Wrongful Death Act, and we have found none.

While it is true that by a ratio of better than two to one, the majority of states have ruled in favor of permitting a wrongful death action on behalf of an unborn fetus, what the cases actually reflect is an honest difference of opinion among the state courts as to the effect to be given similar statutory provisions. *Kuhnke v. Fisher,* 683 P.2d 916, 919 (Mont.1984). Since the cause of action for wrongful death is based upon statute, we agree with the California Supreme Court that little would be gained from an analysis of the decisions of all other jurisdictions. *Justus,* 139 Cal.Rptr. at 105, 565 P.2d at 130. Choosing to deny the cause of action, the *Justus* court recognized that

> when the last word shall have been said in such a consideration, the paramount fact will still remain that rights under our ... [wrongful death act] are to be defined not by what other courts have said touching their own statutes, but from the meaning and intent of our own law from a reading of it.

*Id.*

The reasons asserted by other jurisdictions, Kimberly Witty, and the dissent, for allowing the cause of action appear compelling. However, faced with the same arguments and a wrongful death statute similar to ours, the Florida Supreme Court held that, as compelling as the arguments may be, they were not at liberty to rewrite the statute. *Stern v. Miller,* 348 So.2d 303, 307 (Fla.1977). Only the legislature is so empowered. "We are confined to a determination of the legislature's intent." *Id.*

The California Supreme Court found that these same arguments "would be relevant if we were called upon to decide whether California should adopt the proposed cause of action as a matter of judge-made law; they are not persuasive when, as here, the cause of action for wrongful death in this state is a pure creature of statute." *Justus,* 139 Cal.Rptr. at 102, 565 P.2d at 127. The question presented by this case is "not a matter of evolution of the common law,

but rather a question of legislative intent." *Egbert v. Wenzl,* 199 Neb. 573, 260 N.W.2d 480, 482 (1977).

We express no opinion with respect to the existence of the fetus as a person in either the philosophical or scientific sense. We hold only that we have found no evidence that the legislature intended to include a fetus within the scope of our wrongful death statute. Therefore, no cause of action may be maintained for the death of a fetus under the wrongful death statute until the right to bring such action is afforded by the legislature.

### Survival Action

In addition to there being no evidence of legislative intent to include the fetus within the scope of the Survival Statute, where a fetus dies *in utero,* survival action damages either do not exist or may be recovered as part of the mother's personal injury damages. Medical and funeral expenses of the fetus are expenses incurred by the mother as a direct result of her injury. There are, of course, no lost wages by the fetus. Not only is any physical pain and suffering the fetus may experience far too speculative, but in the current state of medical technology, there is not even the possibility of proof to support the cause of action.

Furthermore, our decision in *Yandell* allows recovery of damages for personal injuries to the fetus only where there is a subsequent live birth. *Yandell,* 471 S.W.2d at 569. Since the Survival Act merely allows the cause of action for personal injuries to survive to the estate of the deceased, *Yandell* precludes such action where there is no live birth.

We, therefore, affirm the court of appeals denial of the survival action.

### Common Law Mental Anguish

Kimberly Witty's common law claim for mental anguish suffered as a result of the loss of her fetus is barred under the Worker's Compensation Act. The mental anguish suffered by Ms. Witty is a part of the injury suffered as a result of the accident. Such injury is covered by the provisions of the Worker's Compensation Act. There is no basis for creating a legal distinction among numerous allegations of mental anguish claimed to be suffered separately as a result of different aspects of the same injury. We, therefore, reverse that part of the court of appeals' judgment which held Witty's common law claim for mental anguish not to be barred by recovery of Worker's Compensation benefits and render judgment that such claim is barred under the Worker's Compensation Act.

### Destruction of Chattel

Witty's remaining contention is that the court of appeals erred in denying her cause of action for recovery of damages resulting from the destruction of her chattel, the fetus. Although we hold that an unborn fetus does not fall within the scope of the Wrongful Death Act or the Survival Statute, we hold as a matter of law, that a fetus is not relegated to the status of chattel. The court of appeals did not address that issue. However, the point raised a question of law and can be addressed by this court. *See Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238 (Tex.1985). Since the point has no merit, it is not necessary to remand the cause to the court of appeals.

We reverse that part of the court of appeals' judgment allowing a wrongful death cause of action and a common law claim for mental anguish. Judgment is rendered that no cause of action exists under the Wrongful Death Act for the death of a fetus and all Witty's claims for mental anguish are barred by the Workers' Compensation Act. Furthermore, no cause of action exists in this case for destruction of a chattel. The remainder of the court of appeals' judgment is affirmed.

KILGARLIN, J., joined by HILL, C.J. and RAY, J., dissent.

KILGARLIN, Justice.

I unhesitatingly dissent, although I wish —no, fervently yearn—that it were not necessary; for with its opinion, the court has unbelievably resurrected the old common

law maxim that it is more profitable for the defendant to kill than to injure. A dead fetus is now worth nothing, but one injured and later born alive may sue. *See* Prosser & Keeton, *The Law of Torts* § 127 (5th ed. 1984). One would have assumed that with our belated recognition of a cause of action for prenatal injuries in *Leal v. C.C. Pitts Sand & Gravel Co.*, 419 S.W.2d 820 (Tex. 1967), Texas had finally entered the age of enlightenment, albeit tardily, as the penultimate state to adopt the cause. Now, we consign ourselves to the dark ages of tort law and will again merit the dubious distinction of being one of the last states, if ever, to accept a cause of action already recognized in thirty-six jurisdictions: a wrongful death action for the death of a fetus at the hands of a negligent tortfeasor. (I might point out the ratio is actually 4½ to 1, not simply "better than two to one," as the court suggests. 727 S.W.2d at 505.)

In reaching its result, the court has not only misstated Texas precedent; it has abdicated our responsibility to interpret statutes—a responsibility we consistently have accepted in the past. *E.g., Yowell v. Piper Aircraft Corp.*, 703 S.W.2d 630 (Tex.1986) (loss of inheritance is a recoverable damage under the Wrongful Death Act); *Sanchez v. Schindler*, 651 S.W.2d 249 (Tex.1983) (damages for wrongful death of a child are not limited to pecuniary loss); *Leal v. C.C. Pitts Sand & Gravel Co.* (wrongful death action can be maintained by statutory beneficiaries of infant for prenatal injuries resulting in death); *Hugo, Schmeltzer & Co. v. Paiz*, 104 Tex. 563, 141 S.W. 518 (1911) (a corporation is a person within the meaning of the Wrongful Death Act); *Nelson v. Galveston, H. & S.A. Ry. Co.*, 78 Tex. 621, 14 S.W. 1021 (1890) (a fetus at the time of its father's death may recover as a Wrongful Death Act beneficiary).

Instead, the court announces a new rule regarding the interpretation of statutes. Apparently, we can no longer interpret a statute unless there is legislative history demonstrating an intent as to who is to be embraced by the statute. I am sure that constitutional scholars will view this pronouncement with sheer amazement. Of course, our new result-oriented position is directly contrary to this court's decisions in past Wrongful Death Act cases. Where did the legislature "demonstrate an intent" that loss of inheritance is a recoverable element of wrongful death damages as this court allowed in *Yowell?* Where did the legislature "demonstrate an intent" that the parents of a deceased child could recover for mental anguish and loss of society and companionship in a wrongful death case as this court mandated in *Sanchez?* Where did the legislature "demonstrate an intent" that prenatal injuries resulting in death were actionable under the Wrongful Death Act as this court determined in *Leal?* Where did the legislature "demonstrate an intent" that under the Wrongful Death Act a corporation is a person as this court decided in *Paiz?* Where did the legislature "demonstrate an intent" that a fetus was a surviving child under the Wrongful Death Act as this court concluded in *Nelson?*

The circularity of the court's rule is further manifested by the failure of the court to point to any evidence that the legislature demonstrated an intent that the words "individual" or "person" do *not* include a fetus. Yet, the court, without any reasoning, discussion or analysis, proclaims its holding that the legislature did not intend an unborn fetus to be an "individual" or "person." A proper reading of Texas precedent, cognizance of the historical development of this tort, and appreciation of our constitutional role as the interpreter of statutes leads me to the inescapable conclusion that the parents of a stillborn fetus have a cause of action for its wrongful death.

The court incorrectly interprets *Yandell v. Delgado*, 471 S.W.2d 569 (Tex.1971), saying that it stands for the proposition that live birth is a prerequisite for a child to have a cause of action for prenatal injuries resulting in death. However, even a cursory reading of *Yandell* reveals that the sole issue in the case was whether a fetus had to be viable at the time an injury was sustained in order for the injury to be actionable. *Delgado v. Yandell,* 468

S.W.2d 475 (Tex.Civ.App.—Fort Worth), *writ ref'd n.r.e. per curiam,* 471 S.W.2d 569 (Tex.1971). Furthermore, in *Yandell,* the fetus survived and the suit was brought for personal injuries, not wrongful death. *Id.* The live birth issue in a wrongful death context could not have been before the *Yandell* court because there was no death involved.

In another example of the circular and tortured logic used in its opinion, the court adds apples and oranges (*Yandell's* live birth requirement for a personal injury suit and the language of the Wrongful Death Act) and concludes that because heirs can only bring an action "if the individual injured would have been entitled to bring an action if he had lived" Kimberly Witty has no cause of action for Baby Witty's death. The court unbelievably states "since there is no cause of action for injuries to a living fetus, there can be no cause of action for death of a fetus." 727 S.W.2d at 505. How the court can overlook the fact that under *Yandell,* had Baby Witty survived, it could have brought a cause of action for its prenatal injuries is beyond me. Clearly, the court's premise that there is no cause of action for injuries to a living fetus is a misstatement of the holding of the court's sole Texas authority, *Yandell.*

On the other hand, in *Leal,* this court was confronted with a wrongful death claim arising from prenatal injuries. 419 S.W.2d at 821. I note that in this case, the court opinion devotes all of two sentences to *Leal,* dismissing the case by saying it allows a cause of action for prenatal injuries to a child born alive. But in *Leal,* the infant survived only two days prior to dying. *Id.* at 820. We stated: "[S]ome authorities do not recognize a cause of action for prenatal injuries unless the fetus is viable at the time of injury, and that other authorities do not do so unless the child is born alive. These questions are not before us and are *reserved.*" *Id.* at 822 (emphasis added).

In fact, despite its summary treatment by the court, *Leal* is precedent for holding that a fetus is an individual under the Wrongful Death Act. In recognizing the cause of action for prenatal injuries, this court stated, "[t]he dissenting opinion of Justice Cadena [in the court of civil appeals] comprehensively presents the case for recognition of a right of action for prenatal injuries ... and we are in agreement with his opinion." *Id.* In his dissent, Justice Cadena recognized the separate existence of the unborn child and stated that the doctrine that the unborn child is but a part of its mother is absurd. *Leal v. C.C. Pitts Sand & Gravel, Inc.,* 413 S.W.2d 825, 829 (Tex.Civ.App.—San Antonio 1967).

Thus, it is clear why the bulk of the court's opinion relies on cases from other jurisdictions. The result reached by the court has no basis in Texas law. No doubt because the overwhelming majority of jurisdictions are in opposition, the court states "little would be gained from an analysis of the decisions of all other jurisdictions." 727 S.W.2d at 505. But, in contradiction, the court then proceeds to rely on opinions from five other states' courts to bolster its decision.

The arguments the court uses as further support for its holding, when reduced to raw essential, are: (1) a conclusion, based solely on the premise that because inheritance rights were conditioned on live birth, the universal common law rule was that all rights of a fetus were contingent upon live birth, and (2) no manifestation of legislative intent, for if the legislature had intended fetuses to be covered, it would have said so.

Let us first address the common law, for in arguing that the legislature did not intend fetuses to be covered by the Wrongful Death Act, the court asserts that the common law rule was "the rights of a fetus were contingent upon live birth." 727 S.W.2d at 505. From this the court deduces "had there been the legislative intention to create a wrongful death action for an unborn fetus, the legislature would have specifically so stated." 727 S.W.2d at 505.

It is more than arguable that the common law did not limit rights of fetuses to those born alive. Sir William Blackstone, writing at about the time of the American

Revolution "Of the Rights of Persons," said:

Life ... begins in contemplation of law a[s] soon as an infant is able to stir in the mother's womb. For if a woman is quick with child ... [and] if anyone beat her, whereby the child dieth in her body, and she is delivered of a dead child; this though not murder, was by the antient law homicide or manslaughter.

1 W. Blackstone, *Commentaries* *129

Blackstone continued:

An infant *in ventre sa mere*, or in the mother's womb, is supposed in law to be born for many purposes. It is capable of having a legacy, or a surrender of a copyhold estate made to it. It may have a guardian assigned to it; and it is enabled to have an estate limited to it's [sic] use, and to take afterwards by such limitation, as if it were then actually born.

*Id.* at *130.

It is difficult to fathom how "something" which could be the victim of a homicide or manslaughter is not a person at common law. It likewise defies comprehension how "something" which could be recognized as the object of legal estates or have a guardian could not be a person in the eyes of the common law.[1] The irony of this entire discussion of the common law as it relates to the Wrongful Death Act is that the Texas Supreme Court, almost one hundred years ago, performed a similar exercise. Its conclusion, in *Nelson v. Galveston, H. & S.A. Ry. Co.*, was that under the common law a fetus was sufficiently a person to warrant the fetus being considered a surviving child under the language pertaining to statutory beneficiaries of Texas' Wrongful Death Act. The court would have us believe that *Nelson* stands for the proposition that for purposes of inheritance, the ability of a fetus to take by devise or descent is dependent upon its being born alive. The court would do well to reread *Nelson* to ascertain what it really holds. I might also add that the court, in

*Nelson*, did not wander off into the realm of interpreting legislative intent to determine that a fetus was a Wrongful Death Act beneficiary.

The *Nelson* court relied on several landmark English cases for authority. One, *Thelluson v. Woodford*, 4 Ves.Jr. 227, 31 Eng.Rep. 117 (Ch.1798), was a monumental opinion, which, including a recitation of counsel's argument, was over one hundred pages in length. Sitting by special invitation of Lord Chancellor Loughborough, Sir Francis Buller, formerly a justice of the Court of King's Bench but by 1798 a judge of the Court of Common Pleas, responded to the contention that an infant *in ventre sa mere* was a non-entity, saying:

Let us see, what this non-entity can do. He may be vouched in a recovery, though it is for the purpose of making him answer over in value. He may be an executor. He may take under the Statute of Distributions. 22 & 23 Ch. II. c. 10. He may take by devise. He may be entitled under a charge for raising portions. He may have an injunction; and he may have a guardian.

*Id.* at 320–21, 31 Eng.Rep. at 163.

Lord Chancellor Hardwicke, speaking in *Wallis v. Hodson*, 2 Atk. 114, 117, 26 Eng. Rep. 472, 473 (Ch.1740), said that an infant *in ventre sa mere* was a person *in rerum natura* (in the nature of things) "so that both by the rules of the common and civil law, she was, to all intents and purposes, a child, as much as if born in the father's life time."

Justice Edwin Hobby concluded his *Nelson* analysis of the common law with what is equally a most persuasive statement as relates to this case. He quoted from *Doe v. Lancashire*, 5 Durn. & East R. 49, 61, 101 Eng.Rep. 28, 36 (K.B.1792), where the Court of King's Bench, through Justice Buller, said: "[t]here is no distinction between a child *in ventre sa mere* and one actually born," an opinion joined in by his colleague, Justice Grose.

If the common law did recognize the fetus as one actually born, and thus a

---

1. The court leaves us in a vacuum as how to identify a fetus. We are told it is not a chattel; but, it has an existence separate from its mother; and, it may be philosophically or scientifically a "person," though not legally one.

person, the court has erred in its assessment of the common law and therefore its deduction that legislative inactivity amounts to no intent for fetuses to be covered under the Wrongful Death Act is severely weakened, if not destroyed. But, in spite of all the authority to the contrary, let us assume the common law is as this court says, and examine legislative intent thusly. To do so we should start with a Penal Code enacted by the legislature but four years prior to its passage of Texas' first wrongful death statute.

In Chapter IX of that Code, entitled "Of Homicide," the legislature provided "[t]he person upon whom the homicide is alleged to have been committed, must be in existence by actual birth." Tex.Pen.Code art. 545 (1856); Oldham & White, Digest, *Laws of Texas* 425 (1859); Paschal, *Digest of the Laws of Texas*, Vol. I, article 2206. If the legislature found it necessary to limit persons upon whom a homicide could be committed to those born alive, can we not infer two things? One, is there not another category of "persons" than those in existence by actual birth? If so, that is a concession that a fetus was a person, but that the legislature did not intend to follow "the antient law," and make it the subject of a homicide. Two, if the legislature found it necessary in the 1856 Penal Code to qualify "person" to one born alive, why did not the Wrongful Death Act contain the same qualification? Law of February 2, 1860 ch. 35, 1860 Tex.Gen.Laws 32, 4 H. Gammel, *Laws of Texas* 1394 (1898). Can it not be argued that had the legislature intended a similar limitation on "person," it would have said so, contrary to the assertion by the court "that the legislature did not intend the words 'individual' or 'person' to be construed to include an unborn fetus." 727 S.W.2d at 504. Of course, again I remind the court that it offers no evidence supporting its own determination of lack of legislative intent.

In its obeisance to legislative intent, the court would do well to read more of *Sanchez v. Schindler*, which the court concedes states that judicial decision is the best way to develop tort law. That case also states "[t]his court should not be bound by the prior legislative inaction in an area like tort law which has traditionally been developed primarily through the judicial process." *Sanchez*, 651 S.W.2d at 252. *Sanchez* also observed that the Texas Wrongful Death Act was patterned after Lord Campbell's Act. The Fatal Accident Act, 9 & 10 Vict., ch. 93 § 1 (1846). The *Sanchez* court conceded that Lord Campbell's Act was limited to a recovery for pecuniary loss. *Id.* at 251. Nevertheless, with far clearer legislative intent to the contrary than we have in *Witty, Sanchez* abolished the pecuniary loss rule.

Additionally, the court should refer to another of its recent opinions, *Whittlesey v. Miller*, 572 S.W.2d 665 (Tex.1978). In refusing to defer to the legislature to establish a wife's claim for loss of consortium, this court said:

> Such an abdication of judicial responsibility is no longer called for in light of present social realities. The law is not static; and, the courts, whenever reason and equity demand, have been the primary instruments for changing the common law through a continual re-evaluation of common law concepts in light of current conditions.

*Id.* at 668. How the espousers of such views as contained in *Sanchez* and *Whittlesey* can align themselves in *Witty* with those who champion judicial torpidity in the face of legislative inaction is inexplicable to me.

Moreover, in a case closely related to *Witty, Leal v. C.C. Pitts Sand & Gravel, Inc.*, what was this court doing but interpreting Texas' Wrongful Death Statute? The allegation in that case was that an injury occurring to a fetus while *in utero*, but resulting in death two days after birth, was actionable under the Wrongful Death Act. Our predecessors of twenty years ago did not cry out "this is a matter for the legislature to decide," but instead interpreted the language of the Wrongful Death Act, "injury causing the death of any person," to encompass injuries to a fetus. If the *Leal* court found it unnecessary to defer to the legislature on the issue of injury to a fetus, why should we?

Note, and note strongly, that the *Leal* court "reserved" the very issue we have

before us today, death of a viable fetus before birth. 419 S.W.2d at 822. One can only assume that had that court considered the issue at hand to have been properly a legislative matter it would have said so, instead of reserving the issue so that we, twenty years later, could duck the question by answering "no demonstration of legislative intent."

The Arizona Supreme Court was confronted with a similar argument of legislative preemption when it held that the statutory beneficiaries of a fetus could maintain a wrongful death action. That court stated "[t]he common law may participate in the growth and evolution of a statutorily created action, especially where its pronouncements do not constitute 'drastic or radical incursion[s] upon existing law' or directly contradict either legislative words or expressed legislative intention." *Summerfield v. Superior Court of Maricopa County,* 144 Ariz. 467, 473, 698 P.2d 712, 718 (1985) (citation omitted). I agree with the Arizona court. The final interpretation of the Wrongful Death Act rests with this court.

In areas such as tort law, "this court has always endeavored to interpret the laws of Texas to avoid inequity." *Sanchez,* 651 S.W.2d at 252. Moreover, "because the difficulties in reducing refinements of tort law doctrines into statutory form often result in legislation which is either underinclusive or overbroad and which is frequently couched in ambiguous terms which the court must interpret, judicial decision is the best way to develop tort law." *Id.*

The "live birth" requirement advanced by the court perpetuates an inequity, which the court recognizes, yet dismisses. The illogic of this distinction is amply illustrated by a comparison of *Yandell* and this case. In *Yandell,* the fetus was injured prior to its viability, yet because it was born alive, an action could be maintained for the injuries the child sustained *in utero.* 471 S.W.2d at 570. In our case, the fetus was not born alive, but was fatally injured after viability. Thus, because Mrs. Witty's fetus died before birth, American General, by today's decision, is protected, while the *Yandell* defendant, where the injured infant lived, was exposed to liability. This is clearly inequitable.

Another example of the inequity caused by this distinction is illustrated by the oft-cited Ohio appellate court's hypothetical of the two twins who suffer simultaneous prenatal injuries, and one dies moments prior to birth and the other dies moments after birth. *See Stidam v. Ashmore,* 109 Ohio App. 431, 434, 167 N.E.2d 106, 108 (1959). Both situations involve nearly identical problems relating to proof of damages and proof of causation; yet, under the rule announced by the court, recovery is allowed for the latter twin, but the live birth requirement would bar recovery for the first twin.

In addition to the obvious inequities, a brief review of the development of the "live birth" requirement shows that it is outdated. Before the middle of this century, courts did not allow recovery for *any* prenatal injuries. Morrison, *Torts Involving the Unborn—A Limited Cosmology,* 31 Baylor L.Rev. 131, 134–35 (1979). The leading case, *Dietrich v. Inhabitants of Northampton,* 138 Mass. 14, 52 Am.Rep. 242 (1884), controlled American common law for more than sixty years. Morrison, *supra,* at 138. In 1946, a court permitted the parents of a child, born alive, to maintain an action for injuries sustained while the child was *in utero. Bonbrest v. Kotz,* 65 F.Supp. 138 (D.D.C.1946). After *Bonbrest,* jurisdictions overruled the "Dietrich Rule" with such celerity that one writer noted, "[s]eldom has there been such a rapid and overwhelming reversal of firmly established authority as in the trend toward allowing recovery for prenatal injuries to a viable infant." Morrison, *supra,* at 140 (citation omitted).

Nevertheless, some jurisdictions still relied on *Dietrich* and required the fetus to be born alive as a prerequisite to maintaining an action for prenatal torts. *E.g., Drabbels v. Skelly Oil Co.,* 155 Neb. 17, 50 N.W.2d 229 (1951). However, about the time of *Drabbels,* the trend began to change and an overwhelming majority of jurisdictions have since abolished the "live birth" requirement. *See Verkennes v. Corniea,* 229 Minn. 365, 38 N.W.2d 838 (1949) (first court to hold that there was no

"live birth" requirement). Currently, thirty-five states and the District of Columbia allow wrongful death actions to be brought on behalf of stillborn, viable fetuses.[2] Only eight states do not yet allow this type of recovery.[3] The remaining jurisdictions have not passed on the question. With its decision, the court has joined a distinct minority of jurisdictions which cling to an anachronistic requirement that has its genesis in 1884. Ironically, while this court concedes that a fetus has an existence separate from its mother, the basis of the *Dietrich* holding was that no recovery could be allowed because the fetus was merely a part of the mother's body. 138 Mass. at 17.

Furthermore, while problems concerning proof of causation and damages may have been a legitimate concern in 1884, existing medical technology should be able to meet these challenges raised by this cause of action. Neither legal logic nor medical fact supports imposing the live birth requirement in wrongful death suits for prenatal injuries.

"The entire history of the development of tort law shows a continuous tendency to recognize as worthy of legal protection interests which previously were not protected at all." *Restatement (Second) of Torts* § 1 comment e (1965). This case presents us with an opportunity to be consistent with that history by defining "individual" under the Wrongful Death Act to include a fetus. In the absence of *any* legislative intent, it is our constitutional duty to interpret the statute in a manner to prevent inequity. The court has instead chosen to abdicate its role and has announced a rule of law which allows tortfeasors to deprive parents the right to recover for the death of their unborn children. I cannot and will not concur in such a result. I would hold that under our Wrongful Death Act, parents are entitled to assert a cause of action for death of the unborn.

HILL, C.J., and RAY, J., join in this dissenting opinion.

**2.** *Eich v. Town of Gulf Shores,* 293 Ala. 95, 300 So.2d 354 (1974); *Summerfield v. Superior Court of Maricopa County,* 144 Ariz. 467, 698 P.2d 712 (1985); *Hatala v. Markiewicz,* 26 Conn. Sup. 358, 224 A.2d 406 (1966); *Worgan v. Greggo and Ferrara, Inc.,* 50 Del. (11 Terry) 258, 128 A.2d 557 (1956); *Greater Southeast Community Hospital v. Williams,* 482 A.2d 394 (D.C.1984); *Porter v. Lassiter,* 91 Ga. App. 712, 87 S.E.2d 100 (1955); *Volk v. Baldazo,* 103 Idaho 570, 651 P.2d 11 (1982); *Chrisafogeorgis v. Brandenberg,* 55 Ill.2d 368, 304 N.E.2d 88 (1973); *Britt v. Sears,* 150 Ind.App. 487, 277 N.E.2d 20 (1971); *Dunn v. Rose Way, Inc.,* 333 N.W.2d 830 (Iowa 1983); *Hale v. Manion,* 189 Kan. 143, 368 P.2d 1 (1962); *Mitchell v. Couch,* 285 S.W.2d 901 (Ky.1955); *Danos v. St. Pierre,* 402 So.2d 633 (La.1981); *State ex rel. Odham v. Sherman,* 234 Md. 179, 198 A.2d 71 (1964); *Mone v. Greyhound Lines, Inc.,* 368 Mass. 354, 331 N.E.2d 916 (1975); *O'Neill v. Morse,* 385 Mich. 130, 188 N.W.2d 785 (1971); *Verkennes v. Corniea,* 229 Minn. 365, 38 N.W.2d 838 (1949); *Rainey v. Horn,* 221 Miss. 269, 72 So.2d 434 (1954); *O'Grady v. Brown,* 654 S.W.2d 904 (Mo.1983); *White v. Yup,* 85 Nev. 527, 458 P.2d 617 (1969); *Poliquin v. MacDonald,* 101 N.H. 104, 135 A.2d 249 (1957); *Salazar v. St. Vincent Hospital,* 95 N.M. 150, 619 P.2d 826 (1980); *Hopkins v. McBane,* 359 N.W.2d 862 (N.D.1984); *Stidam v. Ashmore,* 109 Ohio App. 431, 167 N.E.2d 106 (1959); *Evans v.*

*Olson,* 550 P.2d 924 (Okla.1976); *Libbee v. Permanente Clinic,* 268 Or. 258, 518 P.2d 636 (1974); *Amadio v. Levin,* 509 Pa. 199, 501 A.2d 1085 (1985); *Presley v. Newport Hospital,* 117 R.I. 177, 365 A.2d 748 (1976); *Fowler v. Woodward,* 244 S.C. 608, 138 S.E.2d 42 (1964); *Nelson v. Peterson,* 542 P.2d 1075 (Utah 1975); *Vaillancourt v. Medical Center Hospital of Vermont,* 139 Vt. 138, 425 A.2d 92 (1980); *Moen v. Hanson,* 85 Wash.2d 597, 537 P.2d 266 (1975); *Baldwin v. Butcher,* 155 W.Va. 431, 184 S.E.2d 428 (1971); and *Kwaterski v. State Farm Mutual Auto Insurance Co.,* 34 Wis.2d 14, 148 N.W.2d 107 (1967). Additionally, both Tennessee and South Dakota Wrongful Death Statutes permit an action to be maintained for the death of a fetus. Tenn.Code Ann. § 20–5–106 (1980); S.D. Codified Laws Ann. § 21–5–1 (1985 Supp.).

**3.** *Justus v. Atchison,* 19 Cal.2d 564, 565 P.2d 122, 139 Cal.Rptr. 97 (1977); *Hernandez v. Garwood,* 390 So.2d 357 (Fla.1980); *Kuhnke v. Fisher,* —— Mont. ——, 683 P.2d 916 (1984); *Egbert v. Wenzl,* 199 Neb. 573, 260 N.W.2d 480 (1977); *Graf v. Taggert,* 43 N.J. 303, 204 A.2d 140 (1964); *Endresz v. Friedberg,* 24 N.Y.2d 478, 301 N.Y. S.2d 65, 248 N.E.2d 901 (1969); *Gay v. Thompson,* 266 N.C. 394, 146 S.E.2d 425 (1966); and *Lawrence v. Craven Tire Co.,* 210 Va. 138, 169 S.E.2d 440 (1969).